EMPLOYERS MUTUAL INSURANCE
COMPANY, Respondent,

v.

OAKES MANUFACTURING
COMPANY, Appellant.

No. CX–84–158.

Court of Appeals of Minnesota.

Oct. 23, 1984.

Thomas Athens, Arvesen, Donoho, Lundeen, Hoff, Svingen & Athens, Fergus Falls, for respondent.

W.D. Prindle, Juan A. Alsace, Prindle, Maland, Sellner, Stennes & Thompson, Montevideo, for appellant.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal by the defendant manufacturer from the denial of its motion for a new trial, and from the awarding of prejudgment interest following a jury verdict. Respondent Employers Mutual brought the action to enforce its subrogation claim accruing from payment of workers compensation benefits to the injured employee, who earlier had settled his own action against appellant Oakes. We reverse and remand for a new trial.

### FACTS

The injured employee, Dennis Neisius, is the principal stockholder of Hansen Implement Company which is engaged in the sale and service of farm machinery. He worked fulltime as an employee. A local farmer had purchased a new Oakes L–1000 front-end loader from Hansen and, after he experienced some routine difficulties in the hydraulic system, brought the front-end loader back to Hansen, and Neisius undertook to repair same.

A skid loader is a piece of machinery used for moving earth. The operator sits in a screened cab directly over the engine and hydraulic compartments. The engine compartment contains the machinery which powers the entire piece of equipment. The operator is protected from the moving parts in the engine and hydraulic compartments by a safety cage in which he sits and operates the machinery. To service the engine and hydraulic compartments, the seat, and indeed the entire operator's cage, tips forward on the machine to make the

hydraulic and engine compartments accessible for any service. With the safety cage down, the hydraulic and engine compartments are completely inaccessible, and the operator is completely protected from any moving parts. In order to service the machine, a repairman must raise the safety cage to check any moving parts.

Neisius was by lifetime occupation a mechanic, and had been working on farm implement machinery since leaving high school, a period of some 30 years. He also worked on skid loaders of all makes and models for nine years, and had experience with those manufactured by the appellant. He was qualified to repair and service Oakes' skid loader as the company he partially owned was a dealer of Oakes' products, and had actually sold the L–1000 some two months before the accident.

The L–1000, unlike its predecessors, was a hydrostatic drive loader, i.e., not only the loader, or "shovel," was operated by hydraulic pressure, but the drive wheels themselves. This required extra cooling capacity in the hydraulic compartment, and, in particular, the fan which injured Neisius.

Neisius had long experience in repairing and operating various types of skid loaders. Neisius suspected that a leak in the hydraulic system was causing the breakdown, not an uncommon problem. He started the machine, and proceeded to reach his hand into the hydrostatic compartment with the engine running, contrary to warnings which he had read not to check leaks in hose connections with fingers, but to use instead a piece of wood or cardboard.

The fan was located close to a group of fittings in the hydraulic system which Neisius was checking. There was a metal protective plate above the fan, but Neisius was reaching underneath that plate, where the fittings were located. There was no warning label on the protective plate, nor elsewhere on the loader, and no screen over the fan at the time of the accident. He admitted that, when working in the area of a moving fan blade, extra care is called for

and he knew that the most dangerous hazard a mechanic faces is moving fan blades. Neisius further admitted that he had been careless in checking for leaks with the engine running, knew the proximity of the fan to the hose connection he was attempting to check on, was relying on feel instead of sight, and that he momentarily forgot that the fan was there.

Appellant Oakes opposed introduction of any evidence of subsequent remedial measures, particularly the screen over the fan added later, by a motion *in limine*. Appellant argued that by conceding the feasibility of adding such a screen, it had removed any issue, other than negligence, to which the remedial measure might be relevant.

The court, although indicating that evidence as to Oakes putting in the screen after the accident was to be excluded, did rule Exhibit 5, which clearly shows the screen, admissible. It explained its ruling as follows:

THE COURT: It also should be understood that the photograph that comes in with a screen on it will be there, but there will be no testimony that Oakes put it there.

MR. ATHENS: Are we supposed to ignore the fact the screen is there?

THE COURT: You can say it's there, but the jury will be instructed that the fact that it's there is not to be considered as evidence of negligence * * *.

Transcript, 30. The trial court sustained appellant's objections to four other photographs. No cautionary instruction was ever given concerning Exhibit 5.

Appellant also requested jury instructions on assumption of risk, and on distinguishing between Neisius as an experienced repairman and an "ordinary user." It also requested a strict liability instruction replacing "ordinary user" with "Neisius." Finally, it asked for a special verdict form that would phrase liability in terms of "fault" for both Neisius and Oakes Manufacturing. The trial court denied all of these requested instructions.

Appellant also raises claims of jury misconduct and prejudicial misconduct by respondent's counsel in closing argument.

The jury found that Neisius was not at fault in the accident, and apportioned 100% of fault to Oakes.

## ISSUES

1. Did the trial court err in failing to give a cautionary instruction against consideration of the screen added after the accident as evidence of negligence or product defect?

2. Did the trial court err in not instructing the jury to distinguish between Neisius and an "ordinary user"?

3. Was the special verdict form, requiring the jury to compare product defect with "fault" of the user, confusing to the jury or prejudicial to the defendant?

4. Is prejudgment interest allowable on a subrogation claim to a personal injury damage award?

## ANALYSIS

Appellant raises a number of issues concerning the conduct of the trial and the evidentiary rulings and instructions of the trial court. Because we believe a new trial is required, we address only those issues necessary to this decision and to the proceedings on remand.

### 1. *Subsequent remedial measures*

Following the date of manufacture of the skid loader on which Neisius was injured, appellant Oakes added a screen over the fan in the hydraulic compartment. Oakes admitted the feasibility of adding the screen, and the trial court at one point indicated that it would exclude evidence of this subsequent remedial measure. The court, however, ruled that exhibits 5 and 19 would be admitted, and indicated that a cautionary instruction would be given. No such instruction was given.

Exhibit 19 was a schematic drawing of the parts to the hydraulic compartment, including the fan. Respondent's counsel had drawn a screen over the fan, in ink.

This evidence of a *suggested* alternative design did not constitute evidence of a subsequent remedial measure actually undertaken by the manufacturer.

Exhibit 5 was a photograph of an Oakes L–1000 skid loader, showing a repairman reaching into the hydraulic compartment, where a screen was clearly visible over the fan in which Neisius was injured. This was graphic evidence of the post-accident alteration made by Oakes. Although there was no testimony that the screen had been installed by the manufacturer, this could readily be inferred.

The supreme court, in *Faber v. Roelofs*, 298 Minn. 16, 212 N.W.2d 856 (1973), indicated that the trial court should give a cautionary instruction where subsequent remedial measures are admitted into evidence. The court, nevertheless, has affirmed a judgment on a jury verdict against the defendant where no such cautionary instruction was given. *Kingsley v. Ind. School Dist. No. 2, Hill City*, 312 Min. 572, 251 N.W.2d 634 (1977). In *Kingsley*, there were several negligent acts or omissions alleged of the defendant, only one of which was the subject of a subsequent remedial measure. The court held that no prejudice resulted justifying a new trial, because there was ample evidence of negligence in the other, unrepaired acts or omissions, and because the defendant failed to request a cautionary instruction. 312 Minn. at 575, 251 N.W.2d at 636.

Here the primary alleged act of negligence, or defect in design, consisted of the absence of a screen over the fan. Oakes admitted the feasibility of installing such a screen, but presented testimony intended to show that such a screen was not necessary to the safety of the machine. Exhibit 5, if taken to be an admission that the skid loader was negligently designed without the screen, was highly prejudicial.

### 2. *Strict liability instruction*

Appellant requested an instruction on strict liability which would have stated the standard for "defect" in terms of a condi-

tion unreasonably dangerous to "Dennis Neisius," or an "experienced repairman," rather than to an "ordinary user." Appellant sought a similar change in the special verdict form. Appellant also requested a jury instruction that would have applied a higher standard of care to Neisius' care for his own safety. The trial court denied the requested instructions.

Oakes argues that Neisius, as a professional mechanic, should be held to a higher standard of care, citing *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342 (8th Cir.1981), in which the defendant was sued for breach of warranty, negligence, and misrepresentation in the sale and installation of equipment. In *LeSueur Creamery*, the defendant installer had made several unsuccessful attempts to correct a temperature control problem, and the jury found it to be negligent. The court held that professionals, and those engaged in a trade or skill, are held to a higher standard of care.

There is no authority in Minnesota which would support the alteration of the strict liability standard where the injured person is a tradesman experienced with the product, as distinguished from an "ordinary user." In this case, however, there was evidence showing that the operator's cage was designed to protect the "ordinary user," or operator, from the hydraulic compartment fan, as distinguished from an experienced mechanic repairing the machine.

■ Contributory negligence is a want of ordinary, or reasonable, care. *Cormican v. Parsons*, 282 Minn. 94, 163 N.W.2d 41 (1968). Ordinary care is the degree of care which the ordinary person would exercise in the same circumstances. *Flom v. Flom*, 291 N.W.2d 914 (Minn.1980). The knowledge of exposure to danger is a factor which bears on the issue of contributory negligence. *Lieser v. Northern States Power Co.*, 268 Minn. 95, 128 N.W.2d 292 (1964).

■ Although the evidence may not have supported an instruction on assumption of risk, we believe that Neisius' general knowledge of the machine and the record of his testimony warranted an instruction allowing the jury to consider that knowledge and repair experience on the issue of contributory negligence.

We are concerned that, absent such an instruction, the denial of all of appellant's requested instructions effectively denied it the opportunity to present its theory of the case to the jury. *Sandhofer v. Abbott-Northwestern Hospital*, 283 N.W.2d 362 (Minn.1979).

### 3. Comparing "fault" with product defect

Appellant challenges the special verdict form in that it asked the jury to compare "defect in design" of the product with Neisius' "fault." The comparative fault statute, however, includes within the term "fault," " * * * acts or omissions * * * that subject a person to strict tort liability." Minn.Stat. § 604.01, subd. 1a (1982).

■ The supreme court in *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn.1977), approved the submission of a products liability case to the jury by means of a special verdict in the same language used here. There is no indication, in *Busch* or elsewhere, that such a comparison is confusing to the jury or prejudicial to a defendant.

### 4. Prejudgment interest

■ Prejudgment interest is not allowed where the amount of damages depends upon contingencies or upon jury discretion. *Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 189 N.W.2d 499 (1971).

■ Here, although Employers Mutual had paid out a certain sum and its claimed damages were not at issue, the jury had discretion over the award in that damages would be reduced by the percentage to Neisius. In this situation, prejudgment interest is not appropriate. As the supreme court has stated:

We are reluctant to hold that before a defendant's liability has been fixed in a personal injury action he is in "default of

legal duty" for failure to pay damages which have previously been established. *Integrity Mut. Ins. Co. v. State Farm Mut. Ins. Co.*, 281 Minn. 78, 82, 160 N.W.2d 557, 559 (1968).

### DECISION

The trial court's failure to give a cautionary instruction after admitting evidence of a subsequent remedial measure was prejudicial error, requiring a new trial. The trial court also should have given an instruction as to the knowledge of the machine possessed by Neisius as an experienced repairman. The special verdict form requiring comparison of product defect with the user's "fault" was not erroneous. Prejudgment interest is not allowable should respondent prevail on retrial.

Reversed and remanded.