**Robert KALLIO, Respondent,**

v.

**FORD MOTOR COMPANY, Appellant,**

**Tomahawk Ford, Inc., Defendant.**

No. C4–85–2126.

Court of Appeals of Minnesota.

Aug. 5, 1986.

Review Granted Oct. 22, 1986.

Robert R. Johnson, Robert R. Johnson & Associates, Minneapolis, for respondent.

Richard Bowman, Hildy Bowbeer, Cynthia J. Atsatt, Bowman and Brooke, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The jury returned a verdict for respondent Robert Kallio in his suit against appellant Ford Motor Company that alleged that both the design and accompanying warnings for the transmission on his Ford pickup truck were defective. On appeal, Ford argues that the trial court erred: (1) when it allowed Kallio's design defect claim to go to the jury and refused Ford's requested instructions; (2) when it allowed Kallio's failure to warn claim to go to the jury and refused Ford's requested instructions; and (3) when it admitted evidence of subsequent design modifications and warnings. We affirm.

## FACTS

In September 1978, Robert Kallio was returning home from work when it began to rain and he pulled his Ford pickup truck over to the side of the road to cover some tools that were in the back. Kallio put the truck in park, left the engine running and did not apply the parking brake. As he jumped on the back bumper of the truck, the truck began to move in reverse. Kallio

tried to reach the driver's door to jump back in the truck but he slipped and the truck ran over both his legs and his hand. As a result of the accident, Kallio required surgery on his spine and has some permanent disability.

At trial, Kallio presented evidence to show that the reason his truck began to move in reverse was because of a design defect in the transmission that created a false or illusory park. Experts testifying for Kallio explained that this false park occurs on automatic transmissions when the gear selector lever gets caught on the gear tooth between park and reverse. The operator will believe the vehicle is in park because the vehicle is not moving. The slightest jar, however, can cause the gear selector to fall off the tooth and back into reverse. This phenomena is known as migration or misshifting.

William Barr, an instructor in mechanical engineering and a consultant in accident reconstruction, testified for Kallio. Barr referred to a 1971 interoffice memo from Ford that indicated Ford understood the false park problem even then. He noted two changes Ford had made in response to the problem. Ford had changed the lettering on the steering column by removing the letters "ark" from the word "park" to encourage drivers to be sure the selector lever was all the way into the park position. In 1980 Ford also changed the design of the gear selector, but in his opinion this modification had not corrected the problem because the problem was still present in 1985 models.

Barr explained that the false park only occurs when the driver does not move the selector lever all the way to the left. Barr had tested Kallio's truck and noted that the vehicle was difficult to shift. He stated that this extra resistance in the selector lever increases the chances of a driver misshifting the vehicle into false park.

Barr testified that he had designed a device that could be installed on the transmission and would force the vehicle into park instead of allowing it to slip back into reverse in the event the vehicle is shifted into false park. He estimated that the device would cost approximately $2.00 on new vehicles and between $8.00 and $10.00 on vehicles already manufactured. He stated that in his opinion this device would correct the migration problem but noted that the device was not ready for production at the time of trial. Barr acknowledged that he has not tested his device on a vehicle and that because of the rarity of the migration problem, the device would have to be tested on between 15 to 30 million vehicles to ascertain how effective the device is in correcting the shifting problem.

Michael Inden, another mechanical engineer, also testified for Kallio. Inden testified that he had discovered design defects in transmissions like the one in Kallio's truck. He explained that the transmission is designed so that there is additional force needed to move the selector lever between reverse and park. This additional force requirement increases the likelihood that the driver will stop moving the selector lever before completing the shift into park. He testified that the most resistance occurs at the crest of the gear tooth which is where the lever rests when it is in false park. Inden stated that a driver would not actually notice these differences in the force required to move the selector lever.

Inden acknowledged that although he had an idea for a safer design, he had never actually tried his idea. He indicated that Ford's design modification that made the tooth in between reverse and park more pointed would help to correct the defect because it would not be as easy for the lever to come to rest on the tooth. Inden testified that this change was feasible before 1980 and he thought the technology existed at the time the original transmission was designed that could have made it safer.

Robert Lange and Roger McCarthy, both executives for Failure Analysis Associates (FAA), a design research company, testified for Ford. Lange indicated that like other transmission systems, the transmission in Kallio's truck has multiple force

peaks between park and reverse, but in his opinion these force peaks would not cause a driver to misshift. Lange testified that he had examined the design differences between Kallio's truck and other vehicles and did not believe that these differences would have decreased the chance of misshifting. He said that while working at Ford he and his colleagues had considered several alternative designs and had rejected all of them. Lange also did not believe that Barr's device would have a measurable effect on misshifts because Ford had experimented with a similar device and had rejected it. Lange did acknowledge that the warnings sent to owners in 1981 cautioning them to shift carefully could have been sent in 1971.

McCarthy also recognized that there were force peaks in the gear selector lever but did not believe that these could cause a driver to misshift. He believed that misshifts were due to driver error and not to any design defect. McCarthy admitted that the technology to make the gear tooth between park and reverse more pointed was available before 1980 when this modification was finally made.

McCarthy testified that he had done an extensive review of the literature on the effectiveness of warnings, and did not believe that additional warnings would have any influence on overlearned behavior like shifting into park. He admitted that most people are not aware of the risk of misshifting but he stated that the risk is so low that other more dangerous problems would take priority over this warning.

Dr. Tarald Kvalseth, a professor of mechanical engineering who specializes in human factors engineering, testified that the danger of misshifting is not an obvious danger that drivers would be aware of and therefore the condition was unreasonably dangerous without a warning. He believed that a warning would help to call drivers' attention to the problem.

## ISSUES

1. Did the trial court err when it submitted the issue of design defect to the jury and refused to submit Ford's requested jury instructions on that issue?

2. Did the trial court err when it submitted the failure to warn issue to the jury and refused to submit Ford's requested jury instructions on that issue?

3. Did the trial court err when it admitted evidence of subsequent design modifications?

## ANALYSIS

### I.

Ford argues that it was entitled to a directed verdict on Kallio's design defect claim or in the alternative to a jury instruction on the necessity of an alternative design.

Ford would have us hold that under *Bilotta v. Kelley Co.*, 346 N.W.2d 616 (Minn. 1984), a plaintiff must show the existence of a feasible, practicable alternative design as one element of a prima facie case for design defect. We do not read *Bilotta* to require such a showing. The supreme court noted in *Bilotta* that:

In order to recover under the theory of strict liability, the plaintiff must establish (1) that the defendant's product was in a defective condition unreasonably dangerous for its intended use, (2) that the defect existed when the product left the defendant's control, and (3) that the defect was the proximate cause of the injury sustained.

346 N.W.2d at 623 n. 3 (citing *Lee v. Crookston Coca-Cola Bottling Co.*, 290 Minn. 321, 329, 188 N.W.2d 426, 432 (1971)). Furthermore we need not address the issue of whether an alternative design is a part of the prima facie case or only a factor to use in evaluating whether the product is defective. In the present case Kallio presented testimony to show that there was a feasible alternative design.

William Barr testified that he had designed a device that would decrease the likelihood of the gear selector lever slipping back into reverse. He indicated that this device would cost between $2.00 and

$10.00 and that the device could be manufactured. We recognize that Ford presented evidence that questioned the effectiveness of this proposed device, and highlighted the fact that the proposed device had not been tested. The jury could, however, have accepted the testimony of Kallio's experts. That testimony was sufficient to permit a jury to find that a practical, inexpensive, alternative design was available. *See McCormack v. Hankscraft Co.*, 278 Minn. 322, 334–35, 154 N.W.2d 488, 497–98 (1967).

■ Ford also contends that the trial court should have given Ford's proposed instruction that placed the burden of proof on the plaintiff to prove by a preponderance of the evidence that there was a feasible practicable alternative design available. As noted above, we do not read current Minnesota case law to impose such a requirement. Such an instruction would have over-emphasized this element of the case and would have been inappropriate.

## II.

Next Ford contends that Kallio failed to prove a prima facie case of failure to warn because he did not establish that there was a duty to warn.

Ford claims that the danger that a running motor vehicle which is left unattended will move when the parking brake is not engaged and the operator has not shifted the transmission completely to park is obvious and that there is no duty to warn of obvious dangers. Kallio acknowledged that he had shifted his truck many times and was aware that if he did not shift into park the vehicle could move. He did not testify, however, that he knew about the false park that could occur on the truck. Ford's own witness, Roger McCarthy, testified that most people are not aware of the risk of misshifting.

■ In order to recover in a strict product liability case, a plaintiff must not be aware of the claimed defect. *McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471, 476 (Minn.Ct.App.1985), *pet. for rev.*

*denied,* (Minn.1985) (quoting *Magnuson v. Rupp Manufacturing, Inc.,* 285 Minn. 32, 40, 171 N.W.2d 201, 207 (1969)). Past experience with a product does not, however, mean that the consumer is aware of all the dangers the product may present. *See Willmar Poultry Co. v. Carus Chemical Co.,* 378 N.W.2d 830, 835 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn.1986). In the present case there was sufficient evidence for a jury to find that Kallio was not aware of the danger of misshifting the truck into a false park.

Ford also claims that there is no duty to warn where the risk of injury is remote. The testimony at trial showed that in comparison to the vast number of shifts completed in a day the instances of misshifting into false park are relatively few. There was also evidence, however, that Ford had received numerous complaints about this problem over the years.

■ Finally Ford argues that the trial court erred when it refused to give four additional jury instructions that Ford requested. A proposed instruction on proximate cause was repetitive and unnecessary because the trial court had already adequately instructed the jury on causation. A requested instruction on no duty to warn of an obvious or known danger was not necessary in light of the ample evidence that the danger of misshifting was not a danger generally known to operators. Ford also requested instructions that would tell the jury there is no duty to anticipate failure to follow instructions if the instructions adequately explain how to use a product safely. In *Frey v. Montgomery Ward & Co.,* 258 N.W.2d 782 (Minn.1977), however, the Minnesota Supreme Court specifically found that not only is there a duty to provide instructions for safe use, there may also be a duty to warn of dangers inherent in the improper use of a product.

## III.

■ The trial court admitted evidence of both subsequent design modifications and subsequent warnings that were sent to all

Ford users. Ford argues that the admission of this evidence was in error.

In *Dahlbeck v. DICO Co.*, 355 N.W.2d 157, 165 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Feb. 6, 1985), this court held that Minn.R.Evid. 407 does not apply to strict liability cases and evidence of subsequent remedial measures is admissible. We are aware of the public policy considerations surrounding this issue and are not persuaded that our holding in *Dahlbeck* should be reversed. *See Ault v. International Harvester Co.*, 13 Cal.3d 113, 528 P.2d 1148, 117 Cal.Rptr. 812 (1975). The trial court did not err when it admitted the evidence of subsequent remedial measures.[1]

## DECISION

The trial court did not err when it submitted Kallio's design defect and failure to warn claims to the jury. The trial court did not err by refusing to submit Ford's requested jury instructions on these issues. The evidence of subsequent remedial measures was properly admitted into evidence.

Affirmed.

**1.** Appellant argues that *Employers Mutual Insurance Co. v. Oakes Manufacturing Co.*, 356 N.W.2d 719 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Feb. 6, 1985), requires a different result. That case held it was error not to give a cautionary instruction against considering a modification as evidence of product defect. *Id.* at 722. We note, however, that the ruling in *Employers Mutual* was directed towards a negligence theory rather than strict liability.