**In re HAWAII FEDERAL ASBESTOS CASES This Document Applies to Judge Belloni's Consolidated Pearl Harbor Cases.**

United States District Court,
D. Hawaii.

Dec. 9, 1986.

Gary O. Galiher, L. Richard DeRobertis, Honolulu, Hawaii, for plaintiffs.

Richard Sutton, David Nakashima, Honolulu, Hawaii, for defendant Foster Wheeler Corp.

Burt L. Snyder, Honolulu, Hawaii, for defendants GAF Corp. and Ruberoid Co.

James Duffy, Ralph LaFountaine, Honolulu, Hawaii, for defendant Nicolet, Inc.

Paul Devens, Charles Hite, Honolulu, Hawaii, for defendant Raymark Industries, Inc.

Burnham H. Greeley, Jerold T. Matayoshi and Steven K. Hisaka, Craig K. Furusho, Honolulu, Hawaii, for defendant the Celotex Corp.

OPINION GRANTING PLAINTIFFS' MOTION TO STRIKE STATE OF THE ART AS A DEFENSE TO THEIR STRICT PRODUCTS LIABILITY CLAIMS

BELLONI, District Judge.

Plaintiffs' motion in limine asks the court to exclude "state of the art" evidence as a

defense to their strict products liability claim. I denied the motion because the evidence is relevant to the plaintiffs' negligence claim. However, I am striking the defense as it relates to plaintiffs strict liability claims.

## BACKGROUND

This is a consolidated case wherein thirty-four former Pearl Harbor Naval Shipyard employees seek damages against multiple defendants for injuries allegedly caused by inhaling asbestos dust from products manufactured or sold by defendants. Plaintiffs' theories of recovery are strict liability, negligence, and punitive damages. The strict liability claim has two specifications—the product was dangerously defective because it contained a design defect, and the defendants failed to warn of its danger.

This same question has been recently certified by the United States Court of Appeal for the Ninth Circuit to the Hawaii Supreme Court. According to counsel the briefing in that certified case is completed, unfortunately though, the trials in these consolidated asbestos cases begin on December 15, 1986 so a prompt decision by this court is required. I must decide this issue as I think the Hawaii Supreme Court will. *See Kisor v. Johns-Manville Corp.,* 783 F.2d 1337, 1341 (9th Cir.1986).

## CONSUMER EXPECTATION TEST

■ This motion actually addresses two distinct issues. Defendants argue that the first prong of the design defect test, the consumer's reasonable expectation, does not apply to asbestos products. The two prong design defect test was first adopted by Hawaii in *Ontai v. Straub Clinic and Hospital Inc.,* 66 Haw. 237, 659 P.2d 734 (1983). In *Ontai* the court adopted the holdings of two California cases that provided an alternative dual pronged method for plaintiffs to prove a design defect.

Under the first prong the plaintiff could prove that a product is defective by showing that it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Id.* 66 Haw. at 242, 659 P.2d at 740. The essence of defendants argu-

ment is that an ordinary consumer has no expectation as to the safety of products containing asbestos that were used in shipyards. The claim is that ordinary people have no idea what to expect when it comes to industrial products used in working environments.

There is no Hawaii case law that decides this exact point so defendants base their arguments on a line of California cases that have held that consumers have no expectations concerning certain industrial products, therefore, the second prong of the design defects test must be used. *See e.g. Lunghi v. Clark Equipment Co., Inc.,* 153 Cal.App.3d 485, 200 Cal.Rptr. 387 (1984) In *Lunghi* the court concluded that an ordinary consumer would not have safety expectations concerning a piece of heavy equipment. In a similar case the Hawaii Supreme Court approved a consumer expectation test jury instruction as applied to a thirty-five ton shovel loader. *See Brown v. Clark Equipment Co.,* 62 Haw. 530, 540–43, 618 P.2d 267, 274–75 (Hawaii 1980). So it is questionable whether the Hawaii court would reach the same result as *Lunghi.*

In addition the defendants' reliance on California law is seriously undercut by a recent decision which holds directly against them. In *Gard v. Raymark Industries, Inc.,* 229 Cal.Rptr. 861 (Cal.Ct.App.1986) plaintiff had voluntarily dismissed his negligence claim, a product liability failure to warn count, and the second prong of the design defect test. Consequently he was left with the single claim of a design defect for the defendant's asbestos products failure to meet ordinary consumer expectations. Raymark argued that plaintiff had effectively dismissed his entire action because consumers had no expectations concerning its products. *Id.* 229 Cal.Rptr. at 864.

The court's well reasoned opinion concluded that a reasonable juror with no previous experience with asbestos could conclude that asbestos used in the shipyards failed to meet the consumer expectation test because an ordinary consumer would not expect a disease to result from its use. *Raymark Industries,* 229 Cal.Rptr. at 866. I think the Hawaii Supreme Court would

agree that the ordinary consumer expectation test applies to asbestos products used in shipyards.

In reaching this conclusion it is important to understand the reasoning behind the two pronged design defect test that Hawaii uses.[1] The second prong of the test was intended to be a fall back position for plaintiffs. In *Barker v. Lull Engineering Co., Inc.*, 20 Cal.3d 413, 143 Cal. Rptr. 225, 573 P.2d 443, 446–47 (1978) the court explained that the dual standard is intended to protect plaintiffs from products that *either* fall below ordinary consumer expectations or that are not as safely designed as they should be. This alternative test was, in part, intended to cover products that the ordinary consumer considers dangerous such as chain saws or lawnmowers. *See id.* 573 P.2d at 451. Consequently a product could meet the ordinary consumer expectations as to safety and still be dangerously defective because it failed the second prong of the test because its design could have been safer. *Id.* 573 P.2d at 454–55.

To insure that the plaintiff would not have to resort to a negligence standard of proof under the second prong the court shifted the burden of persuasion to the defendant to prove that its product is not defective. *Id.* And to further protect the plaintiff from hazardous products the court stated that the product must be evaluated in the light of hindsight. *Barker*, 573 P.2d at 457. The second half of the test was intended to apply in cases where the ordinary consumer test would not work.

The Hawaii Supreme Court has reiterated throughout the years that the policy behind strict products liability is to provide consumers with the maximum possible protection that the law can muster against dangerous defects in products. *Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 452, 654 P.2d 343, 347 (1982). This policy is furthered by allowing plaintiffs to prove that the defendants' asbestos products contained design defects under either or both tests. Finally, defendants have failed to cite a single case where a court has held that the ordinary consumer expectation test does not apply to products containing asbestos. Plaintiffs may rely on the first or second prong of the design defect test at trial.

## STATE OF THE ART

Plaintiffs have asked the court to disallow state of the art evidence as a defence to their strict products liability claims. All parties have agreed that the question presented to this court is the identical question certified to the Hawaii Supreme Court. The question certified by the Ninth Circuit to the Hawaii Supreme Court asks whether a manufacturer is conclusively presumed to know of the dangers inherent in its product, "or is state of the art evidence admissable to establish whether the manufacturer knew or through the exercise of reasonable human foresight should have known of the danger?" *Johnson v. Raybestos-Manhattan, Inc.*, No. 85–1623, certified question, at 3 (9th Cir. July 21, 1986).

The purpose of the state of the art defense is to persuade the jury that the defendant cannot be held strictly liable for dangerous defects which it could not discover.[2]

---

1. The test as adopted by Hawaii is:

   a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and *the defendant fails to establish,* in light of relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such a design. (emphasis added).

*Ontai v. Straub Clinic and Hospital Inc.,* 66 Haw. 237, 239, 659 P.2d 734, 739–40 (1983) (*quoting Barker v. Lull Engineering Co., Inc.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 237–38, 573 P.2d 443, 455–456 (1978)).

2. This appears to be the typical manner in which the defense is presented at trial, at least in asbestos litigation. *See Kisor v. Johns-Manville Corp.,* 783 F.2d 1337, 1341 n. 9 (9th Cir. 1986) (defense counsel argued to the jury an "ignorance defense" based on the state of the art). The New Jersey Supreme Court defines state of the art evidence as permitting "a defendant to demonstrate that given the scientific, technological, and other information available

*State of the Art in Design Defect Cases*

Plaintiffs ask the court to bar evidence of state of the art in their design defect case. Defendants' counter that to bar state of the art evidence would eliminate plaintiffs' burden of proving a defect and would impose absolute liability on defendants. (Raymark's brief at 13). Plaintiffs respond that absolute liability will not be imposed because a plaintiff will still have to prove that the product is dangerously defective and that the defect proximately caused the injury. (Plaintiff's brief at 41).

█ I agree with plaintiffs that barring state of the art evidence does not create absolute liability which is disfavored by the Hawaii courts. *See Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 463, 654 P.2d 343, 353 (1982) (merging comparative negligence with strict products liability avoids absolute liability). The rule in Hawaii is that the plaintiff only need show that a product is dangerously defective and that it proximately caused the injury. *Ontai v. Straub Clinic and Hospital Inc.*, 66 Haw. 237, 243, 659 P.2d 734, 740 (1983).

Moreover the Hawaii Court of Appeals has held that the introduction of concepts of "unreasonableness" and "foreseeability" into products liability confuses the jury and equates strict liability with negligence. *Boudreau v. General Elec. Co.*, 2 Haw. App. 10, 15–16, 625 P.2d 384, 389 (1981).

Nor does Hawaii apply the restatement test that requires the product to be "unreasonably dangerous," *Ontai*, 66 Haw. at 241, 659 P.2d at 739, because the unreasonably dangerous requirement injects negligence concepts into strict products liability. *See Brown v. Clark Equipment Co.*, 62 Haw. 530, 542, 618 P.2d 267, 275 (1980) (court commenting on why many jurisdictions reject the unreasonably dangerous standard).

█ State of the art really goes to the foreseeability of the inherent dangers of the product. Many courts that have considered the question reject this evidence

at the time of manufacture or distribution, it could not have known of the dangers of the product." *Fischer v. Johns-Manville Corp.*, 103

because it turns strict products liability into negligence. *See Lockwood v. AC & S, Inc.*, 44 Wash.App. 330, 341–43, 722 P.2d 826, 833–34 (1986) (under Washington law state of the art is not a defense in an asbestos strict product liability suit and impermissibly puts negligence concepts before the jury); *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. 95, 499 A.2d 326, 329 (1985) (no negligence based state of the art defense allowed in design defect or failure to warn product liability cases); *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 438 (Mo.1984) (negligence based defense of state of the art not allowed in asbestos strict product liability case). State of the art impermissibly puts negligence concepts before the jury in violation of Hawaii law.

Another reason state of the art is inadmissable in strict products liability is that the product's design is considered at the time of trial not at the time of manufacture. Hawaii Rule of Evidence 407 allows the jury to consider subsequent remedial measures as proof of a dangerous defect. *See American Broadcasting v. Keni Air of Hawaii*, 67 Haw. 219, 229, 686 P.2d 1, 7 (1984). This retrospective approach is the same approach that the California court adopted for design defects in *Barker v. Lull Engineering Co., Inc.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (Cal.1978). The *Barker* test allows the jury, under the second prong of the test, to determine "upon hindsight" whether the product is dangerously defective. *Id.* 573 P.2d at 457.

Arizona uses a dual pronged design defect test that is very similar to Hawaii's test. *See Dart v. Wiebe Manufacturing, Inc.*, 147 Ariz. 242, 709 P.2d 876, 879–80 (1985). The Arizona test allows the plaintiff to present a risk benefit analysis when the consumer expectation test does not provide a complete answer as to liability. *Id.* Arizona's test focuses on the quality of the product not the conduct of the manufacturer. In order to differentiate strict products liability from negligence the court provided

N.J. 643, 512 A.2d 466, 473 (1986) (citation omitted).

that: "The quality of the product may be measured not only by the information available to the manufacturer at the time of design, but also by the information available to the trier of fact at the time of trial." *Id.* 709 P.2d at 881.[3] Arizona has found it necessary to use the retrospective test in its product liability jurisprudence which is very similar to Hawaii's.

Oregon is another jurisdiction that imputes knowledge of the product's danger to the manufacturer, and the Oregon Legislature has enacted Restatement (Second) of Torts section 402A along with comments a to m. Or.Rev.Stat. section 30.920(3). This imputed knowledge test is, therefore, clearly not inconsistent with strict products liability. *See e.g. Wood v. Ford Motor Co.,* 71 Or.App. 87, 691 P.2d 495 (1984), *rev. den.,* 298 Or. 773, 697 P.2d 556 (1985) (in design defect case manufacturer is presumed to know of risks inherent in its automatic transmission).

Using the hindsight approach focuses the jury's attention on the product itself not on the manufacturer's conduct. Evaluating the manufacturer's design choice with hindsight also effectively eliminates the state of the art defense in the risk/benefit design defect test.

State of the art is also irrelevant to the design defect consumer contemplation test. Under that test the jury is instructed to determine if the product meets the reasonable expectations of the ordinary user or consumer as to its safety. *See Ontai v. Straub Clinic and Hospital Inc.,* 66 Haw. 237, 241, 659 P.2d 734, 739 (1983). Whether or not the manufacturer was ignorant of the products danger is irrelevant when determining if the ordinary consumer would expect a disease from using defendants' products. The focus is solely on the product not on the manufacturer's behavior. *See Kisor v. Johns-Manville Corp.,* 783 F.2d 1337, 1341 (9th Cir.1986) (Washington law); *Dart v. Wiebe Manufacturing, Inc.,* 147 Ariz. 250, 709 P.2d 876, 880 (1985). This analysis applies as well to products that are dangerously defective because they contain no warning of their inherent dangers.

### State of the Art in Warning Cases

■ A product may be faultlessly manufactured but still be dangerously defective because the manufacturer failed to warn the consumer of its inherent danger. Defendants claim that whether the defense is available in a strict liability failure to warn case is an open question in Hawaii. Defendants believe that Hawaii will follow comment j, and that comment j allows the defense. I do not believe that the Court will follow comment j with the result that it overrides the consumer expectation test when the defendants could not have known of the products defects. Nor do I believe that comment j leads to such a result in an asbestos case.

Defendants' claim must be examined in light of two additional factors. First, the Hawaii court "did not adopt the literal definition of strict liability embodied in section 402A." *Brown v. Clark Equipment Co.,* 62 Haw. 530, 541, 618 P.2d 267, 274 (1980). Second, the comments to section 402A are merely a "useful aid in [ ] analysis." *Kaneko v. Hilo Coast Processing,* 65 Haw. 447, 453, 654 P.2d 343, 347 (1982). Hawaii has not strictly followed the restatement nor is it bound to blindly follow the comments.

But the largest flaw in defendants argument is that comment j applies to products that cause allergic reactions.[4] Comment j

---

**3.** The court specifically left open the question whether this rule applies to failure to warn cases or those involving unavoidably unsafe products. *Dart,* 709 P.2d at 881 n. 2.

**4.** Restatement (Second) of Torts section 402A comment j provides:

*Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common *allergies,* as for example eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are *allergic,* and the ingredient is one whose danger is not generally known ... [the seller must warn] if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowl-

applies to common products, such as strawberries, eggs, and possibly cosmetics, that are otherwise safe yet cause allergic reactions. Obviously no one would consider asbestosis, lung cancer, or mesothelioma resulting from asbestos exposure as an allergic reaction.

Moreover the Oregon Supreme Court, using comment j for guidance, concluded that a product is unreasonably dangerous when it does not contain a warning of the products danger. *Phillips v. Kimwood Machine Co.*, 269 Or. 485, 496–99, 525 P.2d 1033, 1036–37 (1974). In order to determine if the product is dangerous the jury assumes that seller knew of the products propensity to injure as it did, and then asks whether a seller would be negligent in selling it without a warning. *Id.* The rationale of the Oregon test, which relies on comment j, should make state of the art evidence irrelevant in warning cases.[5]

Likewise the New Jersey Supreme Court will not allow the state of the art defense in an asbestos failure to warn case. *See Fischer v. Johns-Manville Corp.*, 103 N.J. 643, 512 A.2d 466 (1986); *Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 447 A.2d 539 (1982), *limited by, Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374 (1984). The court felt compelled to reach this result because it enhanced risk spreading, accident avoidance, and avoids confusion in the court room. *Beshada*, 447 A.2d at 548–49.[6] The court concluded: "[w]e impose strict liability because it is unfair for the distributors of a defective product not to compensate its victims. As between those innocent victims and the distributor, it is the distributors—

and the public which consumes their products—which should bear the unforeseen costs of the product." *Id.* 447 A.2d at 549. These are the same policies that the Hawaii court seeks to enhance through its adoption of strict products liability. I think the Hawaii Supreme Court will agree with New Jersey that the defense is unavailable in an asbestos failure to warn case.

Other jurisdictions have also seen and avoided the pitfalls of the state of the art defense in warning cases. The Washington courts disallow the defense in warning cases because it relies on negligence concepts and diverts the jury's attention from the dangerousness of the product to the defendant's conduct. *See Lockwood v. AC & S, Inc.*, 44 Wash.App. 330, 341–43, 722 P.2d 826, 833–34 (1986) (*quoting with approval Kisor v. Johns-Manville Corp.*, 783 F.2d 1337 (9th Cir.1986)). Nor will Pennsylvania allow the defense in a failure to warn case. *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. 95, 499 A.2d 326, 330 (1985).

The California Court of Appeals decided a case that allows the defense in strict product liability cases involving prescription drugs. *See Brown v. Superior Court (Abbot Laboratories)*, 182 Cal.App.3d 1125, 227 Cal.Rptr. 768 (Cal.Ct.App.), *review granted*, 229 Cal.Rptr. 663, 723 P.2d 1248 (1986). In California the courts apply comment k (the unavoidably unsafe product section) to prescription drugs therefore the *Brown* decision does not apply to asbestos products. Moreover the *Brown* court admittedly created a direct conflict with *Kearl v. Lederle Laboratories*, 172 Cal.

edge, of the presence of the ingredient and the danger.... (emphasis added).
The comment goes on to add that a seller of alcoholic beverages or fatty foods need not warn when the over consumption of those common foods causes harm if continued over a long time period.

**5.** The Oregon Court has yet to squarely address the issue presented in this case. In a footnote the court stated that, in 1974, two of the leading academic commentators disagreed as to the time when knowledge is imputed. One argued that it was imputed at the time of sale and

another would impute knowledge at the time of trial. *Phillips,* 525 P.2d at 1036 n. 6.

**6.** The court noted that the concept of knowability is very complex and allowing it as a defense might greatly add to the cost of trial for both sides. In addition, the state of the art is in part determined by the level of investment in safety research by the manufacturers. The court stated: "[f]airness suggests that manufacturers not be excused from liability because their prior inadequate investment in safety rendered the hazards of their product unknowable." *Beshada,* 447 A.2d at 546.

# 1460

App.3d 812, 218 Cal.Rptr. 453 (1985) an opinion by another panel of the court.

The California Supreme Court has accepted *Brown* for review. Its most recent pronouncement on the defense came in *Finn v. G.D. Searle & Co.,* 35 Cal.3d 691, 200 Cal.Rptr. 870, 677 P.2d 1147, 1151 (1984) where it stated that it had not yet decided the issue. The dissent thought the better rule is that whether or not the manufacturer knew of the danger is irrelevant in determining whether the absence of a warning rendered the product defective. *Id.* 677 P.2d at 1169.

Even if the Court were to adopt a different rule for prescription drugs it would not change the result here. New Jersey has already created two different rules one for prescription drugs and other products, *Feldman v. Lederle Laboratories,* 97 N.J. 429, 479 A.2d 374, 388 (1984), and one for asbestos products, *Beshada,* 447 A.2d 539. *See also Fischer v. Johns-Manville Corp.,* 512 A.2d 466, 473 (reiterating the *Beshada* holding).[7]

I am convinced that the rule in Hawaii, and the better rule, is that state of the art is irrelevant in both design defect and failure to warn cases. I therefore rule that the law of my consolidated Pearl Harbor asbestos cases is that the state of the art is not available as a defense to strict products liability.

---

**7.** Likewise the Louisiana Supreme Court has declared asbestos products defective *per se* and will not allow state of the art evidence in their defense. Apparently the defense is still available for other types of products. *See Halphen v. Johns-Manville Sales Corp.,* 788 F.2d 274, 275 (5th Cir.1986) (certified question to the Louisiana Court). Arizona has also left open the question of whether its hindsight test applies to prescription drugs. *See Dart,* 709 P.2d at 881 n. 2.