168 P.3d 592

**Jerry RANCHES and Rizalina Ranches, Petitioners/Plaintiffs–Appellants**

**v.**

**CITY AND COUNTY OF HONOLULU, Respondent/Defendant–Appellee**

**and**

**John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Doe Non–Profit Entities 1–10; and Doe Governmental Entities 1–10, Defendants.**

No. 27846.

Supreme Court of Hawai'i.

Oct. 5, 2007.

Mark F. Gallagher (Ian L. Mattoch with him on the application), Law Offices of Ian Mattoch, Honolulu, for Petitioners/Plaintiffs–Appellants.

Marie Manuele Gavigan, Deputy Corporation Counsel (Carrie K.S. Okinaga, Corporation Counsel, with her on the response) for Respondent/Defendant–Appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Petitioners/Plaintiffs–Appellants Jerry Ranches (Jerry) and Rizalina Ranches [collectively, Petitioners] filed an application for writ of certiorari [1] on May 16, 2007, requesting that this court review the judgment of the Intermediate Court of Appeals (the ICA) filed on April 16, 2007, issued pursuant to its Summary Disposition Order (SDO) filed on February 16, 2007,[2] affirming the March 15, 2006 judgment of the first circuit court [3] (the court) in favor of Respondent/Defendant–Appellee City and County of Honolulu (Respondent) in a slip and fall case.

Respondent filed a memorandum in opposition to the application for certiorari. In the opposition memorandum Respondent initially contend that Petitioners' petition should be denied because it "does not contain any basis for review that is new or different than his [sic] request for review to the [ICA]." However, Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1 (2007) does not require a new basis for review in order for a petition to be accepted.[4]

 The requirements in HRS § 602–59(b) are "directed only to the application for the writ. It is not descriptive of the scope of review determinative of the [s]upreme [c]ourt's decision to grant or deny certiorari.

---

1. Pursuant to Hawai'i Revised Statutes (HRS) § 602–59 (Supp.2006), a party may appeal the decision of the intermediate appellate court (the ICA) only by an application to this court for a writ of certiorari. See HRS § 602–59(a). In determining whether to accept or reject the application for writ of certiorari, this court reviews the ICA decision for:

 (1) Grave errors of law or of fact; or
 (2) Obvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision,
 and the magnitude of such errors or inconsistencies dictating the need for further appeal. HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. See HRS § 602–59(a).

2. The SDO was issued by Chief Judge James S. Burns and Associate Judges John S.W. Lim and Craig H. Nakamura.

3. The Honorable Randal K.O. Lee presided.

4. HRAP Rule 40.1(d) states:

 (d) *Contents*. The application for a writ of certiorari shall not exceed 12 pages and shall contain in the following order:
 (1) A short and concise statement of the questions presented for decision, set forth in the most general terms possible. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein. Questions not presented according to this paragraph will be disregarded. The supreme court, at its option, may notice a plain error not presented.
 (2) A statement of prior proceedings in the case.
 (3) A short statement of the case containing the facts material to the consideration of the questions presented.
 (4) A brief argument with supporting authorities. A copy of the challenged opinion, dispositional order, or ruling of the [ICA] shall be attached as an appendix.

The [s]upreme [c]ourt's power in that regard is intended to simply be discretionary." *State v. Chong*, 86 Hawai'i 282, 283 n. 1, 949 P.2d 122, 123 n. 1 (1997) (emphasis and citations omitted). Accordingly, Petitioners are not required to provide a "new or different" basis for review in their petition.

## I.

Petitioners present the following questions for this court's decision: "(1) [whether] the definition of what constitutes a subsequent remedial measure under Hawai'i law [should be clarified]; and (2) whether actions taken by [Respondent] in preparation to refinish a floor prior to a slip and fall incident can be defined as *subsequent* remedial measures." (Emphasis in original.)

## II.

The following pertinent matters are from the petition and opening brief.

[Petitioners] filed their Complaint ... on July 13, 2004, alleging that on May 26, 2003, [Jerry] slipped and fell immediately inside the entrance to the men's restroom at Ewa Beach Park due to conditions on the floor which posed an unreasonable risk of harm....

. . . .

*On January 31, 2006, [Respondent] filed various motions ... including [a] ... Motion in Limine No. 1 Re: Exclusion of All Evidence of Subsequent Remedial Measures which addressed the resurfacing project and a groove cut in the concrete slab to drain water away from the door.*

On February 7, 2006[, Petitioners] filed [a] Memorandum in Opposition to [Respondent's] Motion in Limine No. 1....

*A hearing was held ... on February 14, 2006[,] ... [at which Petitioners] argued to the [court] with respect to Motion in Limine No. 1 that the resurfacing of the floor was an ongoing project which had begun before [Jerry's] fall. The [court] granted this motion determining that the post incident resurfacing was a subsequent remedial measure and therefore evidence of it would be prejudicial and it*

*relied upon Rule 407 and Rule 403, Hawai'i Rules of Evidence [ (HRE) (1993) ].* (Emphases added.)

At trial the following evidence was adduced and events transpired, according to Petitioners.

[Petitioners] were occasional users of Ewa Beach Park.... The restroom ... has no roof and the walls were constructed of concrete block. [Jerry] walked past the shower and into the doorway which required him to take an immediate left turn and right turn. As soon as [Jerry] made the left turn his right foot slipped and he fell. [Jerry] noted that the floor under him was smooth and worn. It had previously been painted but the paint had worn off.... [H]e was sitting in a puddle after he fell. There were no drains in the floor and walls of the men's restroom.

... [O]n the day of the incident[, Edgar Cabato] ... entered the men's restroom at approximately 12:00 p.m. Upon entering the men's restroom, Mr. Cabato saw a puddle of water. The floor "had some green moss and mildew." Mr. Cabato authenticated a photograph of the shower pipes without the water "on" and that photograph was admitted as Exhibit P–65. Mr. Cabato testified that the floor felt slippery in the area where he found [Jerry] still on the floor after his fall.

... Stacey Kahue [ (Kahue) ] ... had testified at [a] deposition as [Respondent's Hawai'i Rules of Civil Procedure] Rule 30(b)(6) witness regarding "any and all modifications and/or repairs to the men's restroom and adjacent shower area at Ewa Beach Park from May 26, 1998 up to and including the current date." ... *[Petitioners] made an offer of proof that [Kahue] would testify regarding his work as the project manager for the Department of Design and Construction, City and County of Honolulu, and his prior work as the project manager for Arakaki Contracting which was involved in a floor resurfacing project of the men's restroom ... which began prior to [Jerry's] fall on May 26, 2003. ... In addition to testifying regarding ... the resurfacing work which the floor was determined to require because of*

its worn, weathered and smooth condition, [Kahue] would testify regarding photographs he took of the condition of the restrooms which were submitted to [Respondent] prior to the subject incident.

> [Respondent] objected to [Kahue's] testimony as it would lead "directly to the issue of the resurfacing of the mens' restroom floor in Ewa Beach." The [c]ourt sustained [Respondent's] objection ... and precluded [Kahue] from testifying regarding all aspects of the floor resurfacing project, even those actions taken before the subject fall. The [c]ourt had deemed the post incident resurfacing to be a "subsequent remedial measure" in its ruling on [Respondent's] Motion in Limine No. 1 ... and it extended that definition to include events which occurred prior to the subject incident.

(Emphases added.)

As set forth by Respondent, "[a] jury [trial had] commenc[ed] on February 27, 2006, and end[ed] on March 3, 2006, with the jury's verdict in favor of [Respondent]. [Petitioners] appealed from the judgment entered on the jury's verdict. On February 16, 2007, the [ICA] entered its [SDO] affirming the Judgment."

### III.

With regard to the two questions posed in the petition, Petitioners are generally correct in that the "[ICA] simply states that it affirms the March 15, 2006 judgment" and "[t]herefore it is impossible for Petitioners to specifically address any flaws in the ICA's reasoning." The ICA did say:

> Generally, we agree with the following statement made by [Respondent] in the answering brief:

> The only issues which should be considered by this [c]ourt are the following: 1) *The exclusion of evidence of the resurfacing of the men's restroom floor at Ewa Beach Park and the testimony of [Kahue]*; and, 2) the exclusion of evidence regarding the operation of the

showerhead and the slope of the concrete shower pad.

SDO at 3 (emphasis added).

### IV.

As to their first question, Petitioners cite the following text of HRE Rule 407.

> When, *after an event*, measures are taken which, if taken previously, would have made the event less likely to occur, *evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.* This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving a dangerous defect in products liability cases, ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

(Emphases added.) The Commentary to HRE Rule 407 states in pertinent part as follows:

> This rule is similar to [Federal Rules of Evidence (FRE) ] 407, the Advisory Committee's Note to which points out: "The rule incorporates conventional doctrine which excludes evidence of subsequent remedial measures as proof of an admission of fault.... The ... *ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety.* The courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees, and the language of the present rule is broad enough to encompass all of them."

> This rule is limited strictly to exclusion of such evidence when offered as proof of negligence or culpable conduct. The second sentence of the rule lists some of the other purposes for which this evidence may be admitted. The rule varies from [FRE] 407 in the addition of "dangerous defect in products liability cases" as one permissible purpose for which remedial measures may be admitted. [5]

5. Thus under limited circumstances, subsequent measures were ruled admissible in order to

prove the existence of defects in a product in two Hawai'i cases. In *Am. Broad. Cos. v. Kenai Air of*

(Emphasis added.) (Ellipses points in original.)

As to the first question Respondent reiterates in its response to Petitioners' petition that "the basis for [Respondent's] motion was not only HRE 407 (subsequent remedial measures), but also HRE 403 (exclusion of relevant evidence due to prejudice)."[6] Respondents argue that "the [court] ruled that the evidence of the subsequent floor resurfacing was precluded by HRE 403[, thus t]here is no need in this case for [this c]ourt to define subsequent remedial measures, as that was not the basis for the [court's] ruling."

In response, Petitioners said in their reply brief that Respondent's failure to respond to the HRE 407 issue, and subsequent redirection towards an HRE 403 analysis exemplifies Respondent's lack of understanding of the "trial court's ruling and the interrelationship of Rules 407 and 403 regarding the resurfacing project." The question of whether further explication is needed regarding HRE Rule 407 is subsumed in Petitioners' second question.

## V.

Preliminarily it should be noted that "[t]he bar of [R]ule 407 is specific and unambiguous: Evidence of subsequent remedial measures 'is not admissible to prove negligence or culpable conduct.'" Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 407–1

*Hawaii, Inc.*, 67 Haw. 219, 229, 686 P.2d 1, 7 (1984), this court held that the lower court erred in rejecting Kenai's "offer of proof related to measures allegedly taken to remedy the problem of unexpected power failures in the particular model of aircraft."

In *In re Hawaii Fed. Asbestos Cases*, 665 F.Supp. 1454 (D.Haw.1986), the federal court followed the rationale set forth in *Kenai*, holding that the "state of the art" theory as a defense to strict liability for asbestos claims was inadmissible because "the product's design is considered at the time of trial not at the time of manufacture. [HRE] 407 allows the jury to consider subsequent remedial measures as proof of a dangerous defect." *Id.* at 1457 (citing *Kenai*, 67 Haw. at 229, 686 P.2d at 7).

**6.** In connection with this question, Respondent said in its answering brief that it does not take a position on the HRE Rule 407 argument. Instead, Respondent contended that the court also based its decision on HRE Rule 403 grounds.

(3d ed.2006). The term "subsequent" indicates that the measure in question must have been undertaken "after [the] event," which is "the occurrence that caused the death or injury cited in the current complaint." *Id.* (brackets in original). This rationale tracks interpretations of FRE Rule 407[7] as in *Moulton v. Rival Co.*, 116 F.3d 22, 27 (1st Cir.1997) (admitting evidence of prior accidents was not an abuse of discretion); and *Traylor v. Husqvarna Motor*, 988 F.2d 729, 733 (7th Cir.1993) (stating that "remedial measures were taken before rather than after the 'event,' which in an accident case the courts have invariably and we think correctly understood to mean the accident" (citations omitted)).

HRE Rule 407, entitled "[s]ubsequent *remedial* measures" (emphasis added), provides in relevant part that "[w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." The word "remedial" means "*intended* for a remedy or for the removal or abatement of a disease or of an evil." *Webster's Third New Int'l Dictionary* 1920 (1993) (emphasis added). Thus, a "measure" is "remedial" if it is intended to address the occurrence of an event by making the event less likely to happen in the future. Therefore, measures that are taken after an event but

HRE Rule 403 states in part that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Respondent also declared that under HRE Rule 401, evidence pertaining to the resurfacing of the men's bathroom is not relevant because it does not "have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**7.** It may be noted that "[HRE 407] is similar to [FRE] 407" but "varies from [FRE] 407 in the addition 'dangerous defect in products liability cases' as one permissible purpose for which remedial measures may be admitted." Commentary to HRE Rule 407. The variance between HRE 407 and FRE 407 does not affect the analysis herein, because the instant case does not involve products liability.

that are predetermined before the event are not "remedial" under HRE Rule 407, because *they are not intended to address the event. See Schmeck v. City of Shawnee,* 651 P.2d 585, 600 (Kan.1982) (holding that the city's ordering and installation of traffic signal control devices at an intersection where the plaintiff had been injured were not "remedial" because the city's actions "had been *predetermined* ... many, many months prior to [the] accident," and the city had "*merely completed* something which had *started* long before the plaintiff's accident" (first emphasis added and following emphases in original)); 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5283, at 104–05 & 105 n. 43 (1st ed.1980) (observing that when FRE Rule 407 is read to require a "causal relationship" between the accident and the measures, "exclusion would not be required where the motivation for the remedial measure was not the prevention of a recurrence of the accident in issue," such as where "the defendant undertook repairs as a result of an earlier accident").[8] Because such measures are not "remedial," it follows that evidence of such measures is not inadmissible under the plain language of HRE Rule 407.

## VI.

■ In their appeal, Petitioners contended that "different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue." (Citing *Kealoha v. County of Hawaii,* 74 Haw. 308, 319, 844 P.2d 670, 676 (1993).).

> When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules

of evidence that require a "judgment call" on the part of the trial court.

*Kealoha,* 74 Haw. at 319–20, 844 P.2d at 676.

■ Petitioners correctly submit that "decisions regarding the admissibility of evidence under [HRE Rule 407], such as the decision to exclude [Kahue's] testimony and other evidence of the resurfacing project, should be reviewed under the right/wrong standard as a measure taken is either a subsequent remedial measure[,] or it is not." However, the standard of review for exclusion of evidence under HRE 403 is the abuse of discretion standard. *State v. Rabe,* 5 Haw.App. 251, 264, 687 P.2d 554, 563 (1984) (citation omitted). Evidentiary decisions based on this rule, "which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." *Walsh v. Chan,* 80 Hawai'i 212, 215, 908 P.2d 1198, 1201 (1995) (citation omitted). Under an abuse of discretion standard, as Petitioners set forth,

> [t]he trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Office of Hawaiian Affairs v. State,* 110 Hawai'i 338, 351, 133 P.3d 767, 780 (2006) (citing *Ranger Ins. Co. v. Hinshaw,* 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003) (citation omitted)). Abuse of discretion occurs when "the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.*

## VII.

### A.

As to the second question, Petitioners acknowledge that they must "prove both the existence of a condition which posed an unreasonable risk of harm and that [Respondent] knew, or should have known of the unreasonable risk, and that it failed to take

---

8. Insofar as HRE Rule 407 is similar to its federal counterpart, interpretations of the federal rule by treatises and cases are instructive. *See, e.g., State v. Vliet,* 95 Hawai'i 94, 105, 19 P.3d 42, 53 (2001) ("[B]ecause the HRE are patterned on the [FRE] ..., construction of the federal counterparts of the HRE by the federal courts is instruc-

tive, but obviously not binding on our courts." (Citations omitted.)); *Nakagawa v. Apana,* 52 Haw. 379, 388–89, 477 P.2d 611, 617 (1970) (following a treatise on federal procedure in interpreting Hawai'i Rules of Civil Procedure Rule 59).

reasonable steps to eliminate the risk or adequately to warn users against it." (Citing *Corbett v. Ass'n of Apartment Owners of Wailua Bayview Apartments*, 70 Haw. 415, 417, 772 P.2d 693, 695 (1989).). According to Petitioners, Respondent

> determined that it was necessary to resurface the floor of the men's restroom at Ewa Beach Park. It hired Arakaki Construction to resurface the floor with a slip resistant, paint on substance. Arakaki Construction began to execute the contract and, as part of that work, *[Kahue] inspected and photographed the bath house at Ewa Beach Park. All these actions took place prior to the fall in question. Shortly after the fall, and totally independent of knowledge of the fall, Arakaki Construction proceeded to resurface* the floor of the subject men's restroom.

(Emphasis added.) They state that "[Kahue's] precluded testimony was highly relevant on all of these issues." [9]

Petitioners maintain that "[n]one of these actions had anything to do with the happening of [Jerry's] fall. [Respondent] would not ... have been discouraged or affected in any way, by the prospect of admissibility at a trial arising from an incident yet to occur or unknown at the time." Thus, Petitioners maintain, the excluded evidence "was highly probative of the substantial risk of harm and notice which they were required to prove as elements of their claims."

### B.

Petitioners urge this court to adopt the analysis set forth in several cases that sup-port their position that "Rule 407 limits its scope to evidence of measures which were taken 'subsequent' to the date of the incident which gave rise to the litigation." As set out by Petitioners, in *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir.1991),

> a side loader ... identified as Model 75 was involved in the subject accident. *[Id.]* at 1523. Subsequent to the sale of Model 75, but prior to [p]laintiff's injury, the defendant made design modifications in its subsequent Model 76, which "were on the drawing board prior to the manufacture of Model 75." *Id.* The trial court did not admit evidence regarding these modifications, but the [first c]ircuit concluded that "[a]ny reliance upon 407 at all, however, was misplaced[.]" *Id.*

They cite the following statement from *Raymond.*

> Under [FRE] 407, only measures which take place after the "event" are excluded. The term "event" refers to the accident that precipitated the suit. *Roberts v. Harnischfeger Corp.*, 901 F.2d 42, 44 n. 1 (5th Cir.1989); *Chase v. [Gen.] Motors Corp.*, 856 F.2d 17, 21 (4th Cir.1988).

*Id.* (emphasis added). This is an accurate assessment of the holding in *Raymond* and establishes a clear before and after "event" delineation. In accordance with this rationale, actions taken by Respondent prior to Jerry's fall would not be afforded protection under HRE 407, because the policy considerations behind the statute would not apply as set forth *infra.* [10]

The rationale for this interpretation, Petitioners urge, is in *Cupp v. National Railroad*

---

9. In that regard Petitioners assert that "under [HRE] Rule 407 an action taken prior to an event cannot be a subsequent remedial measure[, and] ... a subsequent action, which is taken pursuant to a predetermined course of action is not a subsequent remedial measure."

10. However, *Raymond* held that "[t]he district court did not abuse its discretion in ruling that the Model 76 evidence was only *marginally* relevant and excluding the evidence under [FRE] Rule 403." 938 F.2d at 1523 (footnote omitted) (emphasis added). The first circuit explained that

> the question of strict liability in New Hampshire centers on the level of dangerousness of the product at the time of sale. For this reason, the introduction of evidence of *pre-accident design modifications not made effective until after the manufacture of the allegedly defective product may reasonably be found unfairly prejudicial* to the defendant and misleading to the jury for determining the question *whether the product was unreasonably dangerous at the time of manufacture and sale.*

*Id.* at 1524 (citation omitted) (emphases added). Contrastingly, in the instant case, the pre-accident measures were not made after the resurfacing of the subject floor, but were made in contemplation of the resurfacing and, arguably, were more than "marginally relevant."

*Passenger Corporation*, 138 S.W.3d 766, 776 (Mo.Ct.App.2004). In that case, the plaintiff argued that "the evidence did no more than reiterate the existence of conditions that Amtrak was aware of prior to the accident and measures Amtrak had planned to take prior to the accident." *Id.*[11] The court of appeals "agree[d]," stating as follows:

> The public policy rationale for excluding evidence of post-accident remedial measures does not apply if the measures in question were planned, provided for, or undertaken prior to the accident. The purpose of the exclusionary rule is to protect a defendant who has been first alerted to the possibility of danger after an accident and has been induced by the accident to make the repair to prevent further injury. A defendant who is aware of the problem and has proposed measures for remediation *prior to the accident is not entitled to the same protection.*

*Id.* (citations omitted) (emphases added). Similarly, it does not appear Respondent can benefit from the protections of HRE 407 simply because it was in the middle of the resurfacing project when the accident took place.

Also, Petitioners rely on *Schmeck.* As previously noted, in that case claims against the city and a power company arose out of a motorcycle accident which occurred on July 11, 1976, as the result of inadequate traffic

signals. 651 P.2d at 588–89. Objection was made to admission of "the date the new signalization equipment was ordered, July 13, 1976, and the date it was finally installed, March 24, 1977[.]" *Id.* at 599. However, the trial court noted that "the installation of traffic control devices ... was conduct that had been *predetermined* ... many, many months *prior to this accident*[.]" *Id.* at 600 (emphases added). Evidence of the city's pre-accident plan to install traffic signals, the installation of which took place after the accident, was held to be admissible.[12] *Id.* The *Schmeck* court reasoned that because the city's actions were determined prior to the accident, "the [city] merely *completed* something which had been *started* long before the plaintiff's accident. Thus, this evidence could not be characterized as subsequent *remedial* conduct." *Id.* (emphases in original).[13]

Finally, Petitioners cite *Rollins*, in which the district court allowed all evidence of repair prior to the accident to be admitted, but precluded admission of evidence of that same repair that occurred after the incident.

> [A]ll evidence of discussions, drafts, proposals, deliberations or actual alterations or repairs regarding either the hardware or the procedures involved with the operation of the ship-to-shore power cable connection that occurred *prior* to the incident on August 11, 1986 will be admitted. This evidence is not governed by Rule 407 and

**11.** In Missouri, "[t]he rule regarding the admissibility of post-accident remedial measures can best be stated by reference to [FRE Rule] 407[.]" *Pollard v. Ashby*, 793 S.W.2d 394, 401 (Mo.Ct. App.1990).

**12.** Kan. Stat. Ann. § 60–451 (2006) which pertains to "Subsequent remedial conduct" states:

When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

**13.** *Schmeck* noted that even though the trial court "really ha[d] a problem even finding the installation of traffic control devices was remedial conduct because it ... had been predetermined ... prior to this accident ...," it nonetheless limited the use of such evidence. *Schmeck*, 651 P.2d at 600. The trial court instructed the

jury that it "could not use anything that happened after the date of the accident *for the apportionment of liability or fault*," although it could be used "to show a condition that existed." *Id.* (emphasis added). The *Schmeck* court, without discussion, seemed to accept the trial court's rationale and further explained that the evidence was also admissible to show "control[, which] was a major issue." *Id.* In contrast, control is not an issue in the present case. In addition, HRE Rule 407 provides that evidence of subsequent remedial measures may be introduced to prove "a dangerous defect in products liability cases, ownership, control, or feasibility of precautionary measures, if controverted, or impeachment" but not "to show a condition that existed." Thus, while we agree with the *Schmeck* court that repairs to which a defendant has committed before an accident but which are not completed until after the accident are not "subsequent remedial measures", the evidence in this case is not admissible under any exception to the general exclusionary rule recognized in this jurisdiction.

is highly probative as to notice and knowledge of the potential dangers of the ship-to-shore hardware and procedures. Evidence of *actual* repairs, alterations or procedural changes made after August 11, 1986 are inadmissible.

761 F.Supp. at 940–41 (emphases in original). The *Rollins* court explained that evidence of prior measures directly connected to the accident are "highly probative as to notice and knowledge of the potential dangers[.]" *Id.* However, the *Rollins* court did not allow evidence which occurred *after* the accident to be admitted under FRE 407. *Id.* at 941. It said that "[e]vidence of *actual* repairs, alterations or procedural changes made after August 11, 1986 are inadmissible." *Id.* (emphasis in original).[14] *Rollins* noted, however, that subsequent matters may be admissible under exceptions to Rule 407. *Id.*[15]

▮ The reasoning of the *Schmeck* court is persuasive. Actions contemplated and commenced *prior* to the "event" required by HRE Rule 407 cannot be considered "remedial" in the sense contemplated by that rule. Moreover, the exclusion from evidence of post event measures does not serve the policy underlying Rule 407 of removing any detrimental effect that such repairs would have on a defendant in subsequent litigation inasmuch as the repairs were contemplated before the accident.

▮ In that light, a rule excluding from evidence measures contemplated before the "event" but completed afterwards as set forth in *Rollins*, without more, is unconvincing. *Rollins* did not explicate the rationale underlying its view that there was "*more*

reason to encourage defendants to take remedial measures", *Rollins*, 761 F.Supp. at 940 (emphasis added), after an "event" although the measures had already been initiated prior to the event. On that point, the reasoning set forth in *Cupp* is significantly more persuasive. HRE Rule 407 was designed to encourage defendants who are first notified of a dangerous conditions to make repairs, without fear of prejudicing their defense in ensuing litigation. It was not, however, designed to protect defendants who knew of a condition, had initiated steps to remedy it, but did not finish before an innocent party was injured. *See, Cupp*, 138 S.W.3d at 776 ("The purpose of the exclusionary rule is to protect a defendant who has been first alerted to the possibility of danger after an accident.... A defendant who is aware of the problem ... prior to the accident is not entitled to the same protection.")

### VIII.

▮ In sum and based on the foregoing, the measures taken by Respondent in this case that began prior to Jerry's accident and continued thereafter cannot be characterized as either subsequent or remedial and, therefore, cannot be precluded under HRE Rule 407, notwithstanding the fact that they were completed after Jerry's accident. To the extent the court excluded such evidence on HRE Rule 407 grounds, it reversibly erred, and insofar as the ICA premised its judgment on such a ruling, the ICA gravely erred.

14. *Rollins* stated that

[t]his policy [under FRE Rule 407] is not served by admitting evidence of subsequent repairs, even if the decision to make such repairs was made prior to the incident being litigated. Once an accident occurs, there is even more reason to encourage defendants to take remedial measures. Defendants should not fear that if litigation ensues after a particular incident, any remedial measures taken will be admitted to prove their negligence.

761 F.Supp. at 940.

15. The *Rollins* court said:

This [c]ourt, however, makes a reservation in accord with Rule 407. Subsequent repairs,

alterations, or procedural changes may be admissible if offered to prove ownership, control or feasibility of precautionary measure, if such is controverted. Moreover, defendants should be on notice that such evidence may also be admitted if necessary for impeachment purposes or if plaintiff seeks to admit the evidence for reasons other than to demonstrate the defendants' culpability. *See Bailey [v. Kawasaki–Kisen K.K.*, 455 F.2d 392,] 396 [ (5th Cir. 1972) ] ("In certain limited instances, however, the policy favoring the repair of dangerous conditions is overcome by the duty of courts to allow litigants to bring the facts of the situation to the attention of the jury where they are otherwise relevant and probative.").

761 F.Supp. at 941.

### IX.

As previously noted, in its opposition memorandum Respondent argues pre-accident evidence was nevertheless excludable "on the basis of HRE 403." HRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

At trial, Respondent's memorandum in support of Motion in Limine No. 1 Re: Exclusion of all Subsequent Remedial Measures, stated that its HRE 403 arguments were made in the alternative.

> Assuming *arguendo* that this [c]ourt allows into evidence testimony or photos of the resurfacing of the floor or the cut made near the entrance of the men's restroom or the feasibility of precautionary measures despite the underlying policy and purpose of Rule 407 of the [HRE], any testimony or photos of the resurfacing or cut near the entrance of the men's restroom *should still be excluded under Rule 403 of the [HRE].*

(Emphasis added.) Respondent argued with respect to Motion in Limine No. 1, that

> [t]he introduction of testimony with regard to the *resurfacing of the floor of the men's restroom or the feasability[feasibility] of precautionary measures will only serve to inflame the passion of the jury and prejudice the City.* Moreover, the introduction of this evidence will confuse the jury with regard to the issues in this case.

(Emphasis added.)

The arguments made by Respondent during the motion in limine hearing similarly indicated that "*[a]ny reference to the resurfacing, because it took place after the incident, would be against public policy. Therefore, any mention of the resurfacing would be more prejudicial* than it would be probative to the City." (Emphasis added.) The court apparently agreed, ruling that,

> [u]nder Rule 407 and Rule 403, 407, subsequent remedial measures, *it's obvious that the resurfacing and the cut in the pad was*

*done after this incident.* The court finds that allowing testimony and or evidence regarding the resurfacing and the cut from the pad, *I think the prejudice outweighs the probative value,* so therefore, the court will grant motion in limine number one.

(Emphases added.)

### X.

The court also ruled at trial on exclusion of Kahue's testimony. According to Respondent,

> when the issue [of excluding evidence of subsequent remedial measures] was revisited during the trial, the [court] allowed the picture requested by [Petitioners], but sustained the objection as to the testimony of witness Kahue, finding that "given the nature of his testimony and balancing it against the probative and prejudice to show the weight of the evidence, the [c]ourt finds that the prejudice outweighs any probative value of his testimony and, therefore, will not allow [Kahue's] testimony."

Upon objection to Kahue's testimony, Petitioners made the following offer of proof:

> It is our intention to call [Kahue], who is currently an employee with the City and County of Honolulu, as a witness *to testify regarding the work that he did back in January of 2003 as a project manager for Arakaki Contracting, which was a contractor retained by the City and County of Honolulu to perform a resurfacing project at various beach parks, rest rooms, including the Ewa Beach Park.* Our purpose in calling [Kahue] would be to *authenticate some photographs,* specifically with respect to photographs in Exhibit Number P–26, *and to elicit testimony from [Kahue] regarding the nature of the project that Arakaki Construction was involved in, specifically the resurfacing of the floor that was planned for this rest room, and his contacts with the City and County of Honolulu regarding the project.* He had an inspector, Allison Ayabe, who was his contact with the Department of Design and Construction, with whom he was in contact to report on the progress of the project.

(Emphases added.) The court sustained the objection, stating:

> The [c]ourt further finds, that given the nature of his testimony and balancing it against the probative and prejudice to show the weight of the evidence, the [c]ourt finds that the prejudice outweighs any probative value of his testimony and, therefore, will not allow [Kahue's] testimony as to where he was working.

The court was not specific in its ruling as to the reasons for sustaining the objection.

### A.

Respondent argued in its answering brief that because witness Kahue could not specifically recall the condition of the men's restroom, his testimony was irrelevant and not highly probative as to the need to repair the floor. Second, Respondent argued that the offer of proof regarding Kahue's testimony did not prove that the resurfacing of the men's restroom would have "eliminated the allegedly dangerous condition." Third, Respondents contended that Petitioners failed to establish an evidentiary link by not retaining an expert to support their position that the resurfacing would have prevented Jerry's accident. In conclusion, Respondent maintained that if the pre-accident events are admitted, "[t]he jury may ... improperly conclud[e] that [Respondent] found that the restroom floor was defective and that the resurfacing project was performed to remedy this defective condition." Respondent argues that thus "the [court] did not abuse its discretion when it precluded evidence of the resurfacing of the men's restroom floor and the testimony of [Kahue]."

### B.

In response, Petitioners submitted in their reply brief that Kahue's testimony regarding the resurfacing project "would have been damaging to the City's case [but] would not constitute 'unfair prejudice' under [HRE] Rule 403." Petitioners quote from the Advisory Committee Notes to FRE Rule 403 which states that "unfair prejudice" in this rule "means an undue tendency to suggest a decision on an *improper* basis, commonly,

though not necessarily, an emotional one." (Emphasis added.)

Petitioners also rely on *Kaeo v. Davis*, 68 Haw. 447, 454, 719 P.2d 387, 392 (1986), which states that "evidence with a capacity for unfair prejudice cannot be equated with testimony simply adverse to the opposing party; for evidence is only material if it is prejudicial in some relevant respect[,]" and *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980), for the proposition that "[e]vidence is prejudicial only when it tends to have some adverse effect upon a [party] beyond tending to prove the fact or issue that justified its admission into evidence."

Petitioners asserted that "*the only danger of 'unfair prejudice' addressed by the [court] was the concern that if this evidence was admitted, the jury could base its decision upon evidence of a subsequent remedial measure* which it considered to be an improper basis[,]" (emphasis added), as it had expressed in its ruling on Respondent's motion in limine no. 1. Petitioners claim that "[t]here is no indication in the record that the [court] was concerned with any other possible prejudicial effect of the testimony of [Kahue] regarding the resurfacing project."

█ Accordingly, Petitioners argue the court's analysis under HRE Rule 403 was "fatally flawed," because "[Kahue's] testimony regarding the resurfacing project which began before the subject incident was not evidence of a subsequent remedial measure under Rule 407." This is correct. With respect to HRE 403, neither Respondent nor the court identified the specific prejudice that would befall Respondent, except that evidence of the pre-accident resurfacing would prejudice Respondent. However, such evidence is not excludable on HRE Rule 403 grounds merely because the effect of admitting such evidence might engender an adverse view of the City's conduct, but must be *unfairly* prejudicial. *See* discussion *infra*.

Second, as to the dangerous condition and (apparently expert) issue(s) Petitioners contend that it was "[not] necessary for Kahue's testimony to 'establish that the resurfacing would have eliminated the allegedly danger-

ous condition,'" in order to be admissible.[16] Petitioners submit that there is no authority to support Respondent's position. Rather, Petitioners claim that "[t]he evidence was admissible, at a minimum, to establish notice ... that the defendant knew, or should have known, of the unreasonable risk of harm." (Citing *Corbett*, 70 Haw. at 417, 772 P.2d at 695.).

## C.

Respondent cites *Bogosian v. Mercedes–Benz of N. Am., Inc.*, 104 F.3d 472, 481 (1st Cir.1997), to support exclusion of evidence of the resurfacing project under HRE Rule 403. In that case, the plaintiff brought a strict liability claim against Mercedes–Benz after the automobile she parked and exited rolled back, injuring her. *Id.* at 474–75. The *Bogosian* court stated that "[a]lthough [the first circuit] has recognized that [FRE] 407 applies to strict liability cases, ... it does not apply where, as here, the modification took place before the accident that precipitated the suit." *Id.* at 481 (citing *Raymond*, 938 F.2d at 1523).

The *Bogosian* court observed that "[i]n cases such as this, the district court may, if necessary, exclude evidence of the remedial modification by resort to its considerable discretion under [FRE] 403, which permits exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury." *Id.* (citations omitted). It was further noted that because

[a] strict liability claim centers on the condition of the product *at the time it leaves the seller's hands*[,] ... the introduction of *evidence of pre-accident design modifications not made effective until after the manufacture* of the allegedly defective product *may reasonably be found unfairly prejudicial* to the defendant and misleading to the jury for determining the ques-

tion whether the product was unreasonably dangerous at the time of manufacture and sale.

*Id.* (citation omitted) (emphases added) (internal quotation marks and citations omitted).

The *Bogosian* court concluded that because "the jury had before it uncontroverted evidence that Mercedes–Benz could have implemented the modification during the relevant time frame[,] any evidence that Mercedes–Benz, in fact, later modified its vehicles risked the danger that 'jurors would too readily equate subsequent design modifications with admissions of a prior defective design.'" *Id.* (citation omitted). Thus, *Bogosian* held that "the district court did not abuse its considerable discretion" in refusing to allow the plaintiff to question Mercedes–Benz's only witness regarding a modification that had taken place subsequent to the sale of the car but prior to the plaintiff's accident because the plaintiff "was attempting to create a feasibility dispute where there was none." *Id.* at 481–82.

■ Unlike *Bogosian*, in this case, the evidence of the measures taken by Respondent that began prior to Jerry's accident were not "uncontroverted." Instead, those measures were probative of proving the existence of a condition which arguably posed an unreasonable risk of harm and that Respondent knew, or should have known created an unreasonable risk, but failed to reasonably eliminate or to adequately warn users about.[17] *See Corbett*, 70 Haw. at 417, 772 P.2d at 695. Moreover, unlike *Bogosian*, this is not a case where proposed modifications to the product or site were made after the product or site had passed into the control of the consumer or user. The product liability situation in *Bogosian* is simply not relevant to the slip and fall situation where the premises always remained in control of Respondent. Therefore, contrary to Respondent's

---

16. It may be noted that no authority is cited for the proposition that expert witness opinion is required as part of the proof in a slip and fall case.

17. The question of whether notice should be attributed to Respondent would, as other facts, rest on the fact finder's determination of credibility

and the weight to be given such evidence. *See State v. Eastman*, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) (stating that ordinarily it is within the province of the "fact-finder to assess the credibility of witnesses and to resolve all questions of fact" (citation omitted)).

contention, *Bogosian* does not support excluding the measures pursuant to HRE Rule 403.

On the other hand, as noted before, the *Rollins* court admitted "all evidence of discussions, drafts, proposals, deliberations or actual alterations or repairs" that occurred prior to the incident inasmuch as that evidence was "not governed by [FRE] Rule 407 and [was] highly probative as to notice and knowledge of the potential dangers[.]" 761 F.Supp. at 940–41. However, in *Rollins*, that court also rejected the defendant's FRE 403 [18] argument as to *subsequent* repairs allowed under any exceptions in FRE 407. It was stated that

> [t]he fact that such evidence may "hurt" the defendants' case does not mean that its probative value is outweighed by its prejudicial effect. "Unfair prejudice" as used in [FRE] Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be *unfair*.

*Id.* at 941 (citation omitted) (emphasis added) (some internal quotation marks omitted). Similarly, in this case, admitting the measures taken by Respondent would not be unfair to Respondent, but would be "highly probative as to notice and knowledge of the potential danger[.]" *Id.* at 940–41.

Therefore, the court incorrectly excluded evidence of the resurfacing project on HRE 403 grounds, because the project commenced before the subject accident and the evidence was not subject to HRE 407 exclusion or the policy considerations thereunder. Such evidence was probative at least as to notice. Under these circumstances, admission of the evidence would not have been *unfairly* prejudicial, as the court apparently believed. *Cf. Cupp*, 138 S.W.3d at 776 (defendant who has proposed measures prior to accident not entitled to bar against post accident remedial

evidence); *Rollins*, 761 F.Supp. at 941 (rejecting FRE 403 argument as precluding subsequent measures into evidence under exceptions to FRE 407); *Schmeck*, 651 P.2d at 600 (evidence of defendant's pre-accident remedial plan and predetermined post accident conduct admissible in evidence).

## XI.

Respondent also declared that under HRE Rule 401, evidence pertaining to the resurfacing of the men's bathroom is not relevant because it does not "have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, based on the foregoing, Respondent's pre-accident plans to resurface the bathroom would have a tendency to make the existence of notice of a dangerous condition—an element of the negligent action—more probable than it would be without the evidence. *See Cupp*, 138 S.W.3d at 776 (defendant aware of problem not entitled to bar of pre-accident measures); *Rollins*, 761 F.Supp. at 940–41 (pre-accident measures highly probative as to notice and knowledge of danger). Accordingly, such pre-accident plans would appear to be relevant.

## XII.

For the foregoing reasons, the ICA's April 16, 2007 judgment and the court's March 15, 2006 judgment are vacated and the case is remanded to the court for disposition consistent with this opinion.

---

**18.** The commentary to HRE Rule 403 states that "[t]his rule is identical with [FRE] 403."